

**ORIGINAL**

# IN THE COURT OF CRIMINAL APPEALS
## OF THE STATE OF OKLAHOMA

**FILED**
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

MAY - 7 2024

JOHN D. HADDEN
CLERK

|  |  |
|---|---|
| In Re:<br>The Setting of Execution Dates<br>In -- | )<br>)<br>)<br>)<br>) |

|  |  |
|---|---|
| RICHARD EUGENE GLOSSIP,<br>JOHN FITZGERALD HANSON,<br>JAMES CHANDLER RYDER,<br>WADE GREELY LAY,<br>RICHARD NORMAN ROJEM,<br>EMMANUEL LITTLEJOHN,<br>KEVIN RAY UNDERWOOD,<br>WENDELL ARDEN GRISSOM,<br>TREMANE WOOD,<br>KENDRICK ANTONIO SIMPSON,<br>RAYMOND EUGENE JOHNSON,<br>CARLOS CUESTA-RODRIGUEZ,<br>JAMES DWIGHT PAVATT,<br>CLARENCE ROZELL GOODE, JR.,<br>RONSON KYLE BUSH,<br>ALFRED BRIAN MITCHELL, and<br>MARLON DEON HARMON, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Case Nos. D-2005-310**
**D-2006-126**
**D-2000-886**
**D-2005-1081**
**D-2007-660**
**D-2000-1609**
**D-2008-319**
**D-2008-595**
**D-2005-171**
**D-2007-1055**
**D-2009-702**
**D-2007-825**
**D-2003-1186**
**D-2008-43**
**DC-2009-1113**
**D-2008-57**
**D-2008-657**

|  |  |
|---|---|
| Appellant, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE STATE OF OKLAHOMA, | ) |
|  | ) |
| Appellee. | ) |

## **ORDER**

On January 30, 2024, the State of Oklahoma, by and through Attorney General Gentner F. Drummond, jointly with the Oklahoma Department of Corrections (DOC) Executive Director Steven Harpe, by and through DOC General Counsel Kari Y. Hawkins, filed with this Court a Joint Motion to Set the Phase Three Execution Dates at 90-Day Intervals pursuant to Title 22, Section 1001.1(D), (E), and (F).

In June of 2022, the State advised this Court that there were no further legal impediments to carrying out executions of approximately twenty-five inmates following a federal court judgment pursuant to its duty to inform the Court and suggest the appropriateness of setting new execution dates. 22 O.S.2021, § 1001.1(D) and (E); *See Glossip v. Chandler*, 2022 WL 1997194 (W.D. Okla. June 6, 2022). The State then requested that this Court set execution dates for these inmates, provided "that each execution be carried out on a Thursday and that executions be scheduled no less than four weeks apart."[1]

---

[1] *In Re: The Setting of Execution Dates in Jemaine Monteil Cannon, et al.*, Nos. D-1996-369, D-2006-627, D-2004-1097, D-2000-886, D-2003-1120, D-2005-1081, D-2007-660, D-2000-1609, D-2008-319, D-2008-595, D-2005-171, D-2007-1055, D-2009-702, D-2007-825, D-2003-1186, D-2008-43, DC-2009-1113, D-2008-57, D-2008-657, at 3 (Okl. Cr. Jul. 1, 2022) (unpublished) (*In Re*

Recognizing the unprecedented nature of the situation and the "sheer volume of cases, . . . along with the execution dates already ordered[,] and the need to ensure compliance with constitutional requirements[,]" this Court divided the cases into four phases consisting of six inmates each being set for execution that honored the State's requested criteria along with a fifth phase containing a single inmate. *In Re Execution Dates I* at 4. This Court further recognized the likelihood of unforeseen delays or other circumstances that may arise requiring adjustment and review. *Id.* at 6. As a result, this Court noted that it would confirm the execution dates for inmates in future phases by written order prior to beginning the phase. *Id.*

In January 2023, this Court entered an order confirming the Phase Two execution dates as previously set in *In Re Execution Dates I*.[2] Subsequently, the State filed a motion with this Court requesting we reset the execution dates in Phase Two to have sixty days between executions. This Court granted the State's request, resetting the

_____

*Execution Dates I*).

[2] *In Re: The Setting of Execution Dates in Jemaine Monteil Cannon, et al.,* Nos. D-1996-369, D-2006-627, D-2004-1097, D-2000-886, D-2003-1120, and D-2005-1081 (Okl. Cr. Jan. 9, 2023) (unpublished) (*In Re Execution Dates II*).

execution dates in Phase Two approximately sixty days apart.[3] However, we noted that "[t]he execution dates for Phases Three through Five have not been confirmed. This Court will address the dates for the remaining executions at an appropriate time in the future." *In Re Execution Dates III* at 4.

To that end, the State has filed the present motion for setting Phase Three execution dates with a request for enlargement of time between each execution from sixty to ninety days. This Court continues to recognize the unique nature of the situation. To provide further assistance and details to the Court in discharging both the Attorney General's duty to suggest the appropriateness of execution dates, and this Court's ultimate responsibility to set executions dates under Section 1001.1(D), (E), and (F), the State appeared at a show cause hearing before this Court on March 26, 2024.

Upon our reevaluation, we give consideration to the Attorney General's request to set executions apart in ninety-day intervals. We also reaffirm our original conviction to "ensure that executions progress in a timely and orderly manner." *In Re Execution Dates I,* at

---

[3] *In Re: The Setting of Execution Dates in Richard Glossip, et al.,* Nos. D-2005-310, D-1996-369, D-2006-627, D-2004-1097, D-2000-886, D-2003-1120, and D-2005-1081 (Okl. Cr. Jan. 24, 2023) (unpublished) (*In Re Execution Dates III*).

6. However, it has also become apparent that setting of executions in phases may exacerbate unforeseen delays that arise in any individual case. To that end, we recognize the recommendations the State has for the setting of an execution date:

1. executions should occur at approximately ninety-day intervals;
2. executions should be set on a Thursday; and
3. DOC requires a minimum of thirty-five-day notice that a defendant is scheduled for execution.

In light of the above, we **DENY** the State's motion to set Phase III execution dates as a group. Rather, this Court will proceed to set executions one at a time. This Court will implement each of the above recommendations when scheduling execution dates, unless circumstances dictate modification as to the interval between executions.

**FURTHERMORE**, we hereby order the Attorney General's Office to timely notify this Court upon the entering, or dissolution, of a stay affecting a scheduled execution. The Attorney General's Office is further ordered to notify this Court upon the execution of a death warrant. Said notice should contain the next eligible inmate. The next eligible inmate shall be determined by the order in which the inmate has exhausted the appeals of their convictions and death sentence,

provided there is no legal impediment to carrying out the execution, as set forth in "Appendix A" attached to this Order. *See In Re Execution Dates I*, at 5. The State shall also timely notify this Court when other inmates not originally included within the phase structure are, or become, eligible. *E.g. Malone v. State*, No. D-2010-1084.

**IT IS SO ORDERED.**

**WITNESS OUR HANDS AND THE SEAL OF THIS COURT** this

1ˢᵗ day of _____ May _____, 2024.

_____
**SCOTT ROWLAND, Presiding Judge***
***I recuse in the cases of Richard Eugene Glossip, No. D-2005-310, Carlos Cuesta-Rodriguez, No. D-2007-825, and Marlon Deon Harmon, No. D-2008-657, but concur as to all other cases.**

_____
**WILLIAM J. MUSSEMAN, Vice Presiding Judge****
****I recuse in the cases of John Fitzgerald Hanson, No. D-2001-717, Wade Greely Lay, No. D-2005-1081, Raymond Eugene Johnson, No. D-2009-702, and Clarence Rozell Goode, Jr., No. D-2008-43, but concur as to all other cases.**

_____
**GARY L. LUMPKIN, Judge** *in part with writing attached*

6

Concurs In Result
Writing Attached

_____
**DAVID B. LEWIS, Judge**

_____
**ROBERT L. HUDSON, Judge**

ATTEST:

_John D. Hadden_
_____
Clerk

7

## "APPENDIX A"

1.    Richard Eugene Glossip, No. D-2005-310;

2.    John Fitzgerald Hanson, No. D-2006-126;

3.    James Chandler Ryder, No. D-2000-886;

4.    Wade Greely Lay, No. D-2005-1081;

5.    Richard Norman Rojem, No. D-2007-660;

6.    Emmanuel Littlejohn, No. D-2000-1609;

7.    Kevin Ray Underwood, No. D-2008-319;

8.    Wendell Arden Grissom, No. D-2008-595;

9.    Tremane Wood, No. D-2005-171;

10.    Kendrick Antonio Simpson, No. D-2007-1055;

11.    Raymond Eugene Johnson, No. D-2009-702;

12.    Carlos Cuesta-Rodriguez, No. D-2007-825;

13.    James Dwight Pavatt, No. D-2003-1186;

14.    Clarence Rozell Goode, Jr., No. D-2008-43;

15.    Ronson Kyle Bush, No. DC-2009-1113;

16.    Alfred Brian Mitchell, No. D-2008-57; and

17.    Marlon Deon Harmon, No. D-2008-657

**LUMPKIN, JUDGE:   CONCUR IN PART/DISSENT IN PART**

I agree execution dates should be set individually rather than in groups. However, I cannot agree to granting additional time between execution dates.

Citizens serving in a capital jury trial vested with the responsibility of rendering the difficult decision as to the appropriate punishment upon a finding of guilt, experience both physical and emotional demands as they do their duty. In the present cases, those citizens, despite the difficulty of rendering the sentence in a capital case, performed their sworn duty and determined death was the appropriate punishment. Their verdict regarding the appropriate sentence must be honored by the State of Oklahoma.  Such honor is shown by fulfilling the duty to carry out each sentence in a timely and professional manner.

The Attorney General and the Department of Corrections (DOC) seem to think the current situation facing the state, *i.e.*, multiple executions becoming due at the same time, is unique to them and has not occurred before. That is not correct. During the period of 2001-03, DOC encountered a similar situation when multiple cases requiring the execution of the death penalty procedure occurred.

DOC's leadership at that time stepped up and carried out the required duties with proficiency and professionalism. In 2001, DOC executed 18 prisoners under the sentence of death. In 2002, DOC executed 7 prisoners under the sentence of death. In 2003, DOC executed 14 prisoners under the sentence of death. During those 3 years there were months where as many as 7 executions took place and several months with 3 executions. The staff of DOC accepted their duties under the law and their oaths of office to faithfully execute those duties professionally, humanely, and with the decorum due such a solemn responsibility. Being a part of the process that takes the life of a human being is a demanding challenge both emotionally and physically, but those leaders and officers met the challenge presented to them and performed their duties honorably.

This Court is now faced with a request to allow 90 days separation between each execution. This is the third time the Court has acceded to the request by the Attorney General and DOC to enlarge the time between executions. Initially this Court followed the State's request for spacing executions thirty (30) days apart. Then the State requested the Court extend that spacing to sixty (60) days and the Court acquiesced. Now the State wants to extend that

2

spacing to ninety (90) days. What is the difference between 2001-03 and today? Is it the level of leadership or staffing of DOC now versus that of DOC in previous years? Individuals in many professions face demanding and arduous duties as part of their job requirements. Personnel in our military continuously face life and death situations, but they step up each day and do their duty. Therefore, I cannot join in extending the spacing between executions to ninety (90) days.

It is time to realize the victims and their families must be remembered and the law established by the Oklahoma Legislature followed. Regardless of how a person feels about the death penalty, it is a part of the law established by the Oklahoma Legislature. Amendments to those laws made in recent years reveal the Legislature has set a priority on expediting them. Until the Legislature changes the procedures it is the responsibility of each person involved in that process to perform his or her duties in a timely manner. This is true whether it be judges, prosecutors, or those charged with carrying out the judgment and sentence entered by the citizens who served on the juries in each of these cases.

During the show cause hearing the State made much about the 35-day protocol to prepare for an execution. It must be remembered

3

there are no statutes or case law which mandate such a protocol. The genesis of that protocol occurred because of a single inmate, Clayton Lockett, D-2000-1330. As Lockett awaited execution, he willfully refused to hydrate his body, thereby making it extremely difficult for the physician to insert the needle for administration of lethal injection drugs. As a result of this single incident, DOC has reacted with a 35-day protocol leading up to the execution. It appears this 35-day protocol was developed without consideration of the timeline prescribed by the Legislature in 22 O.S.2021, § 1001.1. That section requires this Court to set an execution date within thirty (30) days after a defendant fails to meet certain time conditions.[1] The protocol developed by DOC seems to be the State's main argument that more time is needed between execution dates, with lesser emphasis on the emotional stress on DOC employees involved in the execution process. However, as shown in 2001-03 by the actions of DOC employees, they can step up to meet the challenges placed before them when proper leadership is provided.

---

[1] 22 O.S.2021, § 1001.1(A) requires this Court to set an execution date within thirty (30) days after the defendant fails to meet certain specifically listed time conditions. 22 O.S.2021, § 1001.1(D) provides that should a stay of execution be issued by any state or federal court, a new execution date shall be set by this Court sixty (60) days after the dissolution of the stay of execution.

4

I would deny the State's motion to extend the time between executions to 90 days and let the time remain as currently set.[2] However, I do agree with the court that each execution date should be set individually rather than in groups, and I join in the determination that some executions may be set within less than the allowable time period. As Judge Hudson noted during the show cause hearing: William E. Gladstone (Statesman and Prime Minister of Great Britian) said, "Justice delayed is justice denied"; and in 1963 Martin Luther King, Jr. (apparently writing from jail) said, "Justice too long delayed is justice denied." It is important to reflect on the wisdom of those who have gone before us and do our duty to provide justice in a timely manner.

---

[2] I recognize the Court's Order states that it denies the Attorney General's motion. However, on page 5 of the Order, the Court states it "will implement each of the above [State's] recommendations when scheduling execution dates". This indicates the 90 day request will be granted.

5

## LEWIS, J: CONCUR IN RESULTS

I would first note that during the moratorium on the death penalty many defendants exhausted their appeals and became eligible for execution.[1] This Court, therefore, is unable to apply the literal terms of 22 O.S.2021, § 1001.1, in setting executions. We must, however, give deference to the legislative intent that executions generally be scheduled no more than sixty days after a defendant's appeals have been exhausted.

I agree with the majority that we should end the phases; however, I would reject the recommendation of the Attorney General to hold executions at ninety day intervals, and would schedule the first execution within sixty days of this order, utilizing the list of eligible defendants previously provided by the State. I would then schedule subsequent executions individually at intervals of approximately sixty days, evaluating each potential execution date on an individual basis.

---

[1] In the three years prior to the moratorium, the State executed an average of five defendants per year. The Attorney General has made no showing that time between executions will be a contributor to faulty executions.