**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JAMES AREN DUCKETT** AND
**DOMINICK OCCHICONE,**

     *Plaintiff*,

                               **CASE NO. 4:26-cv-0355**
**v.**                            **ACTIVE DEATH WARRANT**
                               **Execution Scheduled for**
                               **July 28, 2026, 12:00 p.m.**
                               **July 28, 2026, 6:00 p.m.**

**RON DESANTIS, et al.,**

     *Defendants.*

_____/

## RESPONSE TO MOTION FOR STAY OF EXECUTION

Plaintiffs ask this Court to halt two lawfully scheduled executions based on a constitutional theory that no court has recognized: that the Constitution prohibits Florida from conducting two executions on the same day because doing so allegedly increases the possibility that execution personnel may become fatigued and make mistakes while administering Florida's lethal-injection protocol. But "[a] stay of execution is an equitable remedy," not "a matter of right," and federal courts must remain "sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal

courts." *Hill v. McDonough*, 547 U.S. 573, 583-84 (2006). The Supreme Court has likewise instructed that courts must carefully police against last-minute litigation that seeks to delay the enforcement of valid criminal judgments and that "[l]ast-minute stays should be the extreme exception, not the norm." *Bucklew v. Precythe*, 587 U.S. 119, 149-50 (2019).

Plaintiffs bear the burden of making a clear showing that they satisfy every requirement for the extraordinary relief they seek. To obtain a stay, they must establish: (1) a substantial likelihood of success on the merits, (2) irreparable injury unless the injunction issues, (3) the injunction would not substantially harm the opposing party, and (4) if issued, the injunction would not be adverse to the public interest. *Barwick v. Governor of Florida*, 66 F.4th 896, 900 (11th Cir. 2023). They cannot satisfy any of those requirements.

This Court should deny the requested stay for four independent reasons. First, Plaintiffs cannot establish the "most important" stay factor, i.e., a substantial likelihood of success on the merits. *See Barwick*, 66 F.4th at 902. Every constitutional claim asserted in the Complaint rests on the same speculative premise that, because Florida intends to

conduct two executions approximately six hours apart, execution personnel may become fatigued, may fail to follow Florida's established execution procedures, and may thereby violate Plaintiffs' constitutional rights. But the Constitution does not authorize federal courts to stay executions based on speculation that state officials might disregard an otherwise constitutional execution protocol. Second, Plaintiffs cannot establish irreparable injury because the alleged constitutional harm depends entirely upon a chain of hypothetical future events unsupported by concrete factual allegations. Third, a stay would substantially harm the State by preventing the enforcement of two long-final criminal judgments and interfering with Florida's sovereign authority to carry out lawful death sentences. Finally, the public interest strongly favors enforcing valid criminal judgments under settled constitutional principles rather than delaying executions based on a novel constitutional theory unsupported by any decision of the Supreme Court or the Eleventh Circuit.

## **Background**

The Governor signed death warrants directing that Plaintiff James Aren Duckett be executed on July 28, 2026, at 12:00 p.m., and that

3

Plaintiff Dominick Occhicone be executed later that same day at 6:00 p.m. Plaintiffs thereafter filed this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief prohibiting Defendants from carrying out those executions as scheduled. Plaintiffs do not challenge the constitutionality of Florida's lethal-injection protocol itself. Rather, they contend that conducting two executions on the same day allegedly creates an increased risk that execution personnel will become fatigued and deviate from established execution procedures, resulting in violations of the Eighth Amendment, the Due Process Clause, the Equal Protection Clause, and the constitutional right of access to the courts. They now seek an emergency stay of both executions while those claims are litigated.

## Argument

**Plaintiffs' Motion for a Stay Should Be Denied Because Plaintiffs Cannot Demonstrate a Substantial Likelihood of Success on the Merits.**

**1. Plaintiffs Failed to Exhaust Available Administrative Remedies.**

As a threshold matter, Plaintiffs cannot demonstrate a substantial likelihood of success because the Prison Litigation Reform Act ("PLRA") bars this action absent proper exhaustion of available administrative

remedies. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983…until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. Courts lack discretion to excuse a prisoner's failure to properly exhaust available administrative remedies before filing suit. *Ross v. Blake*, 578 U.S. 632, 638-44 (2016).

The exhaustion requirement applies to all inmate suits about prison life, including § 1983 challenges to execution procedures. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Here, Plaintiffs challenge the conditions under which their executions allegedly will be carried out, yet they did not properly exhaust that claim through the Florida Department of Corrections' grievance procedures before initiating this action. In fact, Plaintiff Occhicone has not filed any grievance since his warrant was signed on June 26, 2026. Because § 1997e(a) requires proper exhaustion before suit may be filed, Plaintiffs cannot demonstrate a substantial likelihood of success on claims brought in contravention of the PLRA.

Nor does the impending execution date excuse compliance with the statute. Congress created no emergency exception to § 1997e(a), and the Supreme Court has declined to recognize judicially created exceptions

5

beyond those contained in the statute itself. *Ross*, 578 U.S. at 639-44. Plaintiffs' failure to exhaust therefore provides an independent reason to deny their request for a stay.

## 2. Every Constitutional Claim Rests on a Speculative Chain of Assumptions.

Even apart from exhaustion, Plaintiffs cannot establish a substantial likelihood of success because every constitutional claim asserted in the Complaint depends upon the same speculative factual premise. Plaintiffs do not allege that Florida's written lethal-injection protocol is unconstitutional or that the Governor lacks authority to schedule two executions on the same day. Instead, they speculate that because two executions are scheduled approximately six hours apart, execution personnel may become fatigued, fatigue may impair their performance, they may depart from Florida's execution procedures, and those departures may ultimately violate Plaintiffs' constitutional rights. Every claim rises or falls on that chain of assumptions.

That theory is insufficient to justify the extraordinary remedy of a stay. The Complaint contains no factual allegations suggesting that the Department intends to depart from its execution protocol, that execution

6

personnel will be unable to perform their assigned duties, or that Florida has previously failed to conduct an execution safely because another execution occurred earlier the same day. Instead, Plaintiffs ask this Court to infer future constitutional violations from a series of hypothetical contingencies. Speculation of that sort cannot establish a substantial likelihood of success on the merits.

Nor may Plaintiffs overcome this deficiency by assuming that public officials will disregard their legal obligations. Public officials are presumed to discharge their duties lawfully and in good faith. *See United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926). Plaintiffs allege no facts rebutting that presumption. They identify no directive to disregard Florida's execution procedures, no factual basis for concluding that execution personnel will be unable to perform their assigned responsibilities, and no prior instance in which Florida failed to comply with its protocol because of the scheduling of executions. Their claims therefore rest entirely on speculation regarding what public officials might do rather than on plausible factual allegations of what they are likely to do.

7

**3. Because Plaintiffs Challenge the Manner of Execution, the Eighth Amendment Supplies the Governing Constitutional Framework.**

The speculative nature of Plaintiffs' allegations also fails to identify the governing constitutional framework. Although Plaintiffs characterize this case as a challenge to the Governor's scheduling decision, the scheduling decision itself causes no constitutional injury. Plaintiffs do not contend that conducting two executions on the same day is unconstitutional in the abstract. Their alleged injury arises only if execution personnel later fail to administer Florida's otherwise constitutional execution protocol in accordance with established procedures. The alleged constitutional harm therefore concerns the manner in which the executions will be carried out, not the scheduling decision itself.

The Supreme Court has repeatedly instructed that where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Albright v.*

8

*Oliver*, 510 U.S. 266, 273 (1994). Because Plaintiffs' alleged injuries arise solely from the anticipated manner in which their executions will be carried out, the Eighth Amendment provides the governing constitutional standard. *See City of Grants Pass, Oregon v. Johnson*, 603 U.S. 520, 543 (2024) ("None of the city's sanctions qualifies as cruel because none is designed to "superad[d]" "terror, pain, or disgrace." (citing *Bucklew*, 587 U.S. at 130).

Under that settled framework, Plaintiffs cannot demonstrate a substantial likelihood of success. The Supreme Court has made clear that an Eighth Amendment method-of-execution claim requires proof that the challenged method presents a substantial risk of severe pain compared to a feasible and readily implemented alternative. *See Baze v. Rees*, 553 U.S. 35, 50-52 (2008); *Glossip v. Gross*, 576 U.S. 863, 877-78 (2015). Plaintiffs satisfy neither requirement. Their allegations depend entirely on speculation that state officials may disregard an otherwise constitutional protocol, and their proposed "alternative," conducting one execution on a different day, is not an alternative method of execution within the meaning of *Baze* and *Glossip*.

Accordingly, Plaintiffs cannot demonstrate a substantial likelihood

9

of success under the Eighth Amendment. Nor, as explained below, can they avoid that conclusion by repackaging the same speculative allegations under the Due Process Clause, the Equal Protection Clause, or the constitutional right of access to the courts.

## B. Plaintiffs Cannot Establish a Substantial Likelihood of Success Under Any Other Constitutional Provision.

Because Plaintiffs' alleged injury concerns the anticipated manner in which their executions will be carried out, the Eighth Amendment supplies the governing constitutional standard. Plaintiffs nevertheless invoke the Due Process Clause, the Equal Protection Clause, and the constitutional right of access to the courts. None provides an independent basis for relief.

## 1. Plaintiffs' Due Process Claim Fails.

Plaintiffs have not identified any independent liberty interest protected by the Due Process Clause. They cite no authority recognizing a constitutional right to have executions conducted on separate days or otherwise limiting a governor's discretion to schedule executions. Their theory would require this Court to recognize a new substantive due process right unsupported by the Constitution or Supreme Court

10

precedent. The Due Process Clause provides no such basis for relief.

## 2. Plaintiffs' Equal Protection Claim Fails.

Plaintiffs likewise cannot establish a likelihood of success under the Equal Protection Clause. To state such a claim, they must plausibly allege that they were treated differently from similarly situated individuals because of intentional discrimination or another constitutionally impermissible reason.

They do neither. The Complaint identifies no condemned inmates who were similarly situated in all material respects yet treated differently, nor does it allege that Defendants acted with discriminatory intent or for an impermissible purpose. At most, Plaintiffs allege that Florida has not previously conducted two executions on the same day. But a departure from prior practice, standing alone, does not establish an Equal Protection violation.

## 3. Plaintiffs' Access-to-the-Courts Claim Fails.

Plaintiffs fare no better under the constitutional right of access to the courts. That right guarantees inmates a reasonably adequate opportunity to present nonfrivolous legal claims; it does not require states to structure executive decisions to maximize opportunities for

future litigation. *Lewis v. Casey*, 518 U.S. 343, 351-55 (1996); *Christopher v. Harbury*, 536 U.S. 403, 413-15 (2002).

An access-to-courts claim requires an actual injury, i.e., that official conduct frustrated or prevented pursuit of a nonfrivolous legal claim. Plaintiffs cannot make that showing. They filed this action before either execution occurred, sought emergency injunctive relief, presented each constitutional theory they wished to litigate, and obtained expedited judicial review. Their alleged injury is not the denial of access to judicial process but the possibility that future events may someday give rise to additional litigation. The Constitution guarantees access to the courts, not additional opportunities to develop speculative claims.

Accordingly, Plaintiffs have failed to demonstrate a substantial likelihood of success under the Due Process Clause, the Equal Protection Clause, or the constitutional right of access to the courts. Having failed to establish a likelihood of success under either the Eighth Amendment or any other constitutional provision, they cannot satisfy the first—and most important—requirement for obtaining the extraordinary remedy of a stay.

**II. Plaintiffs Cannot Establish the Remaining Requirements for a Stay.**

**A. Plaintiffs Cannot Demonstrate a Likelihood of Irreparable Constitutional Injury.**

Even if Plaintiffs could demonstrate a likelihood of success on the merits, which they cannot, they still would not be entitled to a stay because they have failed to establish a likelihood of irreparable constitutional injury. Like every prerequisite for preliminary injunctive relief, irreparable harm must be shown, not presumed. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

To be sure, execution is irreversible. But that fact alone cannot satisfy the irreparable-harm requirement. If every scheduled execution automatically constituted irreparable injury, every condemned prisoner would be entitled to a stay. The Supreme Court has repeatedly rejected that proposition, emphasizing instead that stays of execution remain governed by traditional equitable principles and are not available as a matter of right. *Hill*, 547 U.S. at 583-84.

The relevant inquiry is therefore whether Plaintiffs have demonstrated that they are likely to suffer an irreparable constitutional injury if the executions proceed as scheduled. They have not. Their

asserted injury depends entirely on the possibility that execution personnel may fail to comply with Florida's execution procedures while carrying out two executions on the same day. As explained above, Plaintiffs offer no factual basis for concluding that such a constitutional violation is likely to occur. Because the alleged constitutional injury is speculative, the claimed irreparable harm is likewise speculative.

Plaintiffs also cannot establish irreparable injury by asserting that the execution schedule impairs their access to judicial review. They have filed this action before either execution, presented each constitutional claim they wish to litigate, sought emergency equitable relief, and received expedited judicial consideration of those claims. The Constitution guarantees meaningful access to the courts, and Plaintiffs have received precisely that. Their contention that future events might generate additional litigation does not establish an imminent constitutional injury warranting a stay.

Finally, the first two stay factors reinforce one another. A plaintiff who cannot demonstrate a substantial likelihood that challenged conduct violates the Constitution ordinarily cannot establish a likelihood of suffering an irreparable constitutional injury from that same conduct.

*See Nken*, 556 U.S. at 434. Because Plaintiffs have shown neither a likelihood of success on the merits nor a likelihood of constitutional injury, the second stay factor independently requires denial of their motion.

**B. The Balance of Equities and the Public Interest Overwhelmingly Favor Denying a Stay.**

The remaining equitable factors independently require denial of Plaintiffs' motion. When the government is the opposing party, "the balance of equities and the public interest merge. *Nken*, 556 U.S. at 434. Both considerations strongly favor permitting Florida to carry out Plaintiffs' lawfully imposed death sentences according to the Governor's warrants.

Florida has a compelling sovereign interest in the timely enforcement of criminal judgments that have become final after full judicial review. The Supreme Court has repeatedly recognized that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Hill*, 547 U.S. at 584. Federal courts considering requests to stay executions must therefore remain "sensitive to the State's strong interest in enforcing its criminal

15

judgments without undue interference." *Id.*

That interest is especially compelling here. Plaintiffs' convictions and sentences have been affirmed on direct appeal, subjected to extensive state and federal collateral review, and have long since become final. The Governor has exercised his statutory authority to issue death warrants, and the State seeks only to carry out judgments that have already received decades of judicial scrutiny. Enjoining the executions would substantially interfere with Florida's sovereign authority to enforce its criminal laws and would delay the implementation of valid judgments absent any demonstrated constitutional violation.

The public interest points in the same direction. The public undoubtedly has an interest in ensuring that executions are conducted in a constitutional manner, but it also has a compelling interest in the faithful application of settled constitutional principles, the finality of criminal judgments, and the orderly administration of justice. Those interests are not advanced by postponing executions based on conjecture regarding future misconduct by public officials. Rather, the public interest is served by applying established constitutional standards while respecting the State's authority to enforce lawful criminal judgments.

Equitable considerations are particularly weighty in the capital context. The Supreme Court has repeatedly cautioned that stays of execution remain an extraordinary remedy and that federal courts must guard against unwarranted interference with the enforcement of valid death sentences. *Hill*, 547 U.S. at 583-84. Those principles carry special force where, as here, Plaintiffs seek to halt scheduled executions based on a constitutional theory that would require this Court to impose a previously unrecognized limitation on the Governor's authority to schedule executions.

Accordingly, the balance of equities and the public interest weigh decisively against granting the extraordinary relief Plaintiffs seek.

## CONCLUSION

The Court should deny Plaintiffs' motion to stay.

Respectfully submitted,

JAMES UTHMEIER
*Florida Attorney General*

/s/ *Jason W. Rodriguez*
JASON W. RODRIGUEZ*
COUNSEL OF RECORD
*Senior Assistant Attorney General*
Florida Bar No.125285

17

jason.rodriguez@myfloridalegal.com
capapp@myfloridalegal.com
Phone: (850) 414-3661
PL-01, The Capitol
Tallahassee, FL 32399-1050
Phone: (850) 414-3300

*/s/ Rick A. Buchwalter*
RICK A. BUCHWALTER
*Senior Assistant Attorney General*
Florida Bar No. 781975
rick.buchwalter@myfloridalegal.com

*/s/ Michael W. Mervine*
MICHAEL W. MERVINE
*Special Counsel,*
*Assistant Attorney General*
Florida Bar No. 692131
michael.mervine@myfloridalegal.com

*/s/ Suzanne Glickman*
SUZANNE GLICKMAN
*Senior Assistant Attorney General*
Florida Bar No. 36572

Office of the Attorney General
Capital Appeals
3507 East Frontage Road, Suite 200
Tampa, Florida 33607-7013
capapp@myfloridalegal.com

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

On this 24th day of July 2026, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will

18

send a notice of electronic filing to the following: the following: Mary Elizabeth Wells, Federal Defender Program Inc., 101 Marietta St. NW, Atlanta, Georgia 30303, **beth_wells@fd.org**, **mewells27@comcast.net**; Brittany Nicole Lacy, Capital Collateral Regional Counsel, and Courtney Hammer, Capital Collateral Regional Counsel, CCRC – South, 110 SE 6th St. Ste. 701, Fort Lauderdale, Florida 33301-5001, **lacy@ccsr.state.fl.us**; **hammerC@ccsr.state.fl.us**, **support@ccsr.state.fl.us**; Eric Pinkard, Chief Assistant CCRC-M, Ali A. Shakoor, Debra Roganne Bell, Mahham Syed, Capital Collateral Regional Counsel-Middle Region, 12973 North Telecom Parkway, Temple Terrace, Florida 33637, **pinkard@ccmr.state.fl.us**, **shakoor@ccmr.state.fl.us**, **bell@ccmr.state.fl.us**, **syed@ccmr.state.fl.us**, **support@ccmr.state.fl.us**, and the Florida Supreme Court, 500 South Duval Street, Tallahassee, Florida 32399, **warrant@flcourts.org, canovak@flcourts.org**.

/s/ *Jason W. Rodriguez*
JASON W. RODRIGUEZ
SR. ASSISTANT ATTORNEY GENERAL