UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA,
TALLAHASSEE DIVISION

**JAMES AREN DUCKETT**,
**DOMINICK OCCHICONE**,
        Plaintiffs,

v.

**RON DESANTIS,** Governor of
Florida,
et, al.,
        Defendants.

_____/

Case No. 4:26-cv-355-TKW-MAF

<span style="color:red">**EMERGENCY INJUNCTIVE RELIEF SOUGHT EXECUTION SCHEDULED FOR: JULY 28, 2026, AT 12:00 P.M.**</span>

## PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO EMERGENCY MOTION FOR STAY OF EXECUTION

On July 23, 2026, Plaintiffs James Aren Duckett and Dominick Occhicone, death-sentenced Florida prisoners with dual executions scheduled for July 28, 2026, filed a complaint in this Court pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief preventing their executions from proceeding (Doc. 1). Mr. Duckett and Mr. Occhicone simultaneously filed an emergency motion for a stay of their executions (Doc. 2). On July 24, 2026, this Court issued an order establishing an expedited briefing schedule "on the motion to stay in this case to ensure that there is time for any necessary appellate review of this Court's ruling on that motion." (Doc. 8). The Court gave Defendants until 5:00 p.m. central time to respond to Mr. Duckett's and Mr. Occhicone's motion. (Doc. 8). In reply to the Defendants'

response, Mr. Duckett and Mr. Occhicone state as follows:

**I.     Plaintiffs Are Not Barred By Failure to Exhaust Because They Had Insufficient Time to Do So and Because No Such Remedies Were Actually Available**

As an initial matter, Defendants assert that Plaintiffs failed to comply with the PLRA's administrative-remedy exhaustion requirement thus the suit must be dismissed (Doc. 10, pp. 4-6). However, no meaningful administrative remedies were available for Plaintiffs to exhaust before filing this suit, and an inmate need exhaust only such administrative remedies as are actually "'available,'" a requirement in the plain language of the PLRA. *Ross v. Blake*, 578 U.S. 632, 648 (2016) (citing 42 U.S.C. § 1997e(a)). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008). No such remedies were available in Plaintiffs' case because any inmate grievance filed with DOC regarding the Execution Procedure and the impact it would have on them would be futile.

"[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643. That is precisely the issue in Plaintiffs' case. While the DOC may have "apparent authority" to grant administrative relief, that fact does not change the reality that DOC "decline[s to] ever exercise" this authority. *See Ross*, 578 U.S. at

643. Per Fla. Admin. Code Ann. R. 33-103.001, this issue is beyond the control of the Department so it is likely non-grievable and Florida history supports that reading. *See also* Fla. Admin Code Ann. R. 33-103.014 (1)(n) (a grievance will be returned without a response on the merits if it is beyond the control of the Department). The Defendants cannot cite one instance with the DOC has responded to or remedied a grievance regarding execution protocol because it has never happened. Plus, considering the State's position that Plaintiff's challenge is meritless, the State's argument that Plaintiff's inmate grievance would not have been futile is disingenuous at best.

Additionally, Plaintiffs were not aware of this issue until Mr. Duckett's execution was scheduled July 14, 2026. Prior to that time, there would have been no reason to file a grievance as it never would have occurred to anyone that the Defendants would attempt to schedule two executions in one day. It had been over 60 years since they had done so and nothing in Florida laws or the protocol indicate that it is contemplated. Although Mr. Duckett attempted to comply with the PLRA requirements by immediately filing a grievance as soon as he learned of the risk he faced, given the time limits of the short two week warrant, there is no chance it will be exhausted before July 28. Other federal district courts, in similar exigent circumstances where there was an active death warrant, have pretermitted the exhaustion analysis altogether, focusing on the merits of the underlying claim. *See*

3

Order, *Long v. Inch*, 8:19-cv-1193, ECF No. 21 at 15 n.5 (M.D. Fla. May 19, 2019) (noting that Defendants raised exhaustion issue in response to inmate's PLRA suit, but foregoing exhaustion analysis and deciding motion for stay on the merits); *Chavez v. Palmer*, 3:14-cv-110, 2014 WL 521067 at (M.D. Fla. Feb. 10, 2014) (same); *Muhammad v. Crews*, No. 3:13-cv-1587, 2013 WL 6844489 *6 n.9 (M.D. Fla. Dec. 27, 2013) (same). This Court should do the same. Requiring Plaintiffs to exhaust through the PLRA, when the process is futile based on lack of time and lack of possible remedy, does not serve the ends of justice nor is it a faithful application of the PLRA and Supreme Court precedent interpreting the Act. Plaintiffs suit  is not  procedurally  barred  on administrative exhaustion grounds.

II.   **Mr. Duckett and Mr. Occhicone Have Met the Requirements for a Stay of Execution**

   A.   **Plaintiffs claims are not speculative and they have established a substantial likelihood of success on the claims.**

Defendants' misapprehend Petitioners' due process claim, restating it as a constitutional right to have executions performed on separate days. That is not Plaintiffs' complaint. Plaintiffs' have a constitutional right to a method of execution that is imposed in careful and humane manner. The Eighth Amendment precludes Defendants from imposing procedures that are "sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.'" *Glossip v. Gross*, 576 U.S. 863, 877 (2015). As Plaintiffs asserted in their

complaint, in the last two instances where states have tried to execute two people at once, the executions were botched.

Contrary to Defendants' argument, these dangers of rushed execution procedures are not speculative. During the execution of Clayton Lockett in Oklahoma, multiple failures in the intravenous line and execution protocol resulted in a prolonged and visibly distressing execution that lasted approximately 43 minutes before Mr. Lockett died of a heart attack, prompting the State to halt scheduled executions pending an investigation. Likewise, in 2017, Kenneth Williams was executed as the fourth prisoner in an unprecedented eight-day execution schedule in Arkansas. Witnesses reported repeated convulsive movements, coughing, and prolonged physical distress during the execution, leading numerous observers and experts to question whether the compressed execution schedule contributed to procedural failures and an unconstitutional risk of unnecessary pain. These incidents demonstrate that accelerated execution schedules place extraordinary strain on personnel and procedures, increasing the likelihood of constitutional violations. Where a State elects to conduct multiple executions in rapid succession, it knowingly heightens the risk that errors in preparation, administration, or monitoring will inflict gratuitous suffering, precisely the type of risk the Eighth Amendment prohibits. See *Baze v. Rees*, 553 U.S. 35, 50 (2008) (plurality opinion) (recognizing that the Eighth Amendment forbids execution

methods presenting a "substantial risk of serious harm"); *Glossip*, 576 U.S. at 877–78 (2015).

The Eighth Amendment's prohibition against cruel and unusual punishment extends not only to the method of execution itself but also to substantial, state-created risks that execution procedures will be administered in a manner that unnecessarily inflicts severe pain. A State's decision to materially alter its established execution protocols—such as by scheduling two executions in a single day when its ordinary practice has been to conduct only one—creates additional operational burdens, compresses preparation and oversight, and increases the likelihood of human error in carrying out an inherently complex and irreversible process. The Constitution does not require an inmate to wait until those risks materialize into an actual botched execution before judicial intervention is warranted. Rather, where a protocol change foreseeably heightens the risk of serious pain without any legitimate penological necessity, the Eighth Amendment is implicated because it prohibits execution procedures that create a substantial and objectively intolerable risk of unnecessary suffering.

Defendants ignore that Plaintiffs' have established that they have been treated differently than all other similarly situated Florida capital defendants in the last 65 years who have faced execution pursuant to a warrant. Indeed, they are the only two set for the same day and the only two at risk of the real and palpable errors that could

result in torturous executions. Setting two executions is not simply a departure from prior practice, there are *no* protocols in place. Without a stay, Mr. Duckett is precluded from participating in discovery to further substantiate his claims.

**B.    Plaintiffs Duckett and Occhicone will suffer irreparable harm if a stay of execution is not granted.**

Defendants did not and cannot plausibly claim that Mr. Duckett and Mr. Occhicone will not suffer irreparable harm. "[D]eath is a punishment different from all other sanctions in kind rather than degree," *Woodson v. North Carolina*, 428 U.S. 280, 303-04 (1976), and "the most irremediable and unfathomable of penalties." *Ford v. Wainwright*, 477 U.S. 399, 411 (1986).

Defendants have no legitimate sovereign interest in carrying out Mr. Duckett's and Mr. Occhicone's sentences in violation of their rights guaranteed by the United States Constitution, and Plaintiffs have articulated specific constitutional issues that this Court must accept as true. The suggestion that the exigency is Mr. Duckett's and Mr. Occhicone's fault is disingenuous where the exigency is the direct byproduct of the Defendants' actions.

It cannot go unmentioned that Mr. Duckett and Mr. Occhicone will suffer a separate and distinct irreparable harm if they are denied a forum to vindicate their constitutional rights in this proceeding. Without a stay Plaintiffs will be executed in a manner that wantonly inflicts pain and suffering in violation of the Eighth Amendment. Irreparable injury is presumptive under warrant. *See, e.g., Wainwright*

7

*v. Booker*, 473 U.S. 935, 937 n.1 (1985) (Powell, J., concurring) ("The third requirement that irreparable harm will result if a stay is not granted is necessarily present in capital cases."); *In re Holladay*, 331 F.3d 1169, 1177 (11th Cir. 2003) ("We consider the irreparability of the injury that petitioner will suffer in the absence of a stay to be self-evident."); *Ferguson v. Warden*, Fla. State Prison, 493 F. App'x 22, 26 (11th Cir. 2012) (Wilson, J., concurring) ("As a general rule, in the circumstance of an imminent execution, this court presumes the existence of irreparable injury."); *Tanzi v. Fla. Dep't of Corr.*, No. 4:25-cv-144, ECF No. 24 at 8 n.4 (N.D. Fla. April 3, 2025) ("agree[ing] with Tanzi that he would suffer irreparable injury if he was executed").

### C. The Balance of Equities Weigh in Plaintiffs' Favor

A stay would not substantially harm the State. While the State has a legitimate interest in the timely enforcement of valid criminal judgments, it has no legitimate interest in executing Plaintiffs in a manner that would risk the wanton infliction of pain or suffering in violation of the Eighth and Fourteenth Amendments. *See, e.g.*, *In re Holladay*, 331 F.3d at 1177 (finding "no substantial harm that will flow to the State of Alabama or its citizens from postponing petitioner's execution to determine whether that execution would violate the Eighth Amendment").

Granting a stay would not be adverse to the public interest. On the contrary, the legitimacy of the penological system turns on its adherence to constitutional

bounds. The public always has an interest in the preservation of constitutional rights and, most certainly, in the humane and dignified carrying out of a death sentence. *See Ford*, 477 U.S. at 409-10 (The Eighth Amendment seeks "to protect the dignity of society itself from the barbarity of exacting mindless vengeance" when carrying out an execution.). Thus, it is in the public interest to address and resolve the merits of Plaintiffs' claim to identify and prevent the unconstitutional risk of causing gratuitous suffering. *See Cooey v. Taft*, No. 2:04-cv-1156, 2007 WL 2607583, at *5 (S.D. Ohio 2007) (granting emergency motion for preliminary injunction and stating "the public interest is served only by enforcing constitutional rights and by the prompt and accurate resolution of disputes concerning those constitutional rights. By comparison, the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights."). Allowing the State to execute a defendant without meaningful review of whether that execution will violate the Eighth and Fourteenth Amendments is adverse to the public interest—more than any minimal delay that may result from granting Plaintiffs' request for a stay and injunctive relief.

## II.    Conclusion

For the reasons set forth above, this Court should enter an order staying Plaintiffs' dual executions scheduled for July 28, 2026, and allow this action to proceed in the ordinary course without the imminent threat of execution.

Respectfully Submitted,

| | |
|---|---|
| Counsel for Mr. Duckett: | Counsel for Mr. Occhicone |

*/s/ Brittney N. Lacy*
BRITTNEY LACY
Assistant CCRC-South
Fla. Bar No. 116001
*lacyb@ccsr.state.fl.us*
*ccrcpleadings@ccsr.state.fl.us*

*/s/ Courtney M. Hammer*
COURTNEY M. HAMMER
Assistant CCRC-South
Fla. Bar No. 1011328
*hammerC@ccsr.state.fl.us*

CAPITAL COLLATERAL
REGIONAL COUNSEL-SOUTH
110 SE 6th Street, Suite 701
Fort Lauderdale, FL 33301
Tel. (954) 713-1284

*/s/ Mary E. Wells*
MARY ELIZABETH WELLS
Fla Bar. No. 0866067

Law Office of M.E. Wells
623 Grant Street SE
Atlanta, GA 30312
*mewells27@comcast.net*

*/s/ Ali A. Shakoor*
ALI A. SHAKOOR
Florida Bar No. 0669830
Assistant CCRC
*shakoor@ccmr.state.fl.us*

*/s/ Debra Roganne Bell*
DEBRA ROGANNE BELL
Florida Bar No. 0973068
Assistant CCRC
*bell@ccmr.state.fl.us*

*/s/ Mahham Syed*
Mahham Syed
Florida Bar No. 1049535
Assistant CCRC
*syed@ccmr.state.fl.us*

CAPITAL COLLATERAL
REGIONAL COUNSEL-
MIDDLE REGION
12973 N. Telecom Parkway
Temple Terrace, Florida 33637
T: 813-558-1643

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by electronic service using ECF to Jason Rodriguez, Assistant Attorney General this 24th day of July, 2026.

*/s/ Brittney N. Lacy*
BRITTNEY N. LACY
Assistant CCRC-South
